# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

REZA AZIZZADEH,

Petitioner,

v.

Joseph Freden, Deputy Field Office Director, Buffalo Federal Detention Facility;
David Kurtzdorfer, in his official capacity as Field Office Director Buffalo Field Office of Immigration and Customs Enforcement;
Todd Lyons, Director of ICE;
Pamela Bondi, Attorney General of the United States;
Kristi Noem, Secretary of Homeland Security;

Respondents.

DETAINED

A# 245-616-625

Case No. _____

---

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE

Petitioner, through counsel, respectfully moves this Court for a Temporary Restraining Order ("TRO") enjoining Respondents from continuing to detain him under INA § 235 (8 U.S.C. § 1225), and requiring Respondents to recognize that Petitioner is detained under INA § 236 (8 U.S.C. § 1226) and entitled to a bond hearing or for his previously granted release on his own recognizance be restored. Petitioner, through counsel, also moves to enjoin the respondents from moving Petitioner's detention location to a detention facility outside of the Western District of New York while this case is pending in this Court. In support of this motion, Petitioner states:

-----

I. INTRODUCTION

1. Petitioner is being unlawfully detained as an "arriving alien" under INA § 235(b) (8 U.S.C. § 1125(b)), since June 24, 2025.

2. Petitioner was arrested inside the United States in Buffalo, NY. (Exhibit B)

1

3. Petitioner was never placed in expedited removal.

4. Petitioner was issued a Notice to Appear under INA § 240 (8 U.S.C. § 1229a), which legally subjects him to detention under INA § 236 (8 U.S.C. § 1226), not INA § 235 (8 U.S.C. § 1225,) on December 17, 2023. (Exhibit A)

5. Petitioner's Notice to Appear indicates "you are an alien present in the United States who has not been admitted or paroled" and does not charge him as an "arriving alien". (Exhibit A)

6. DHS previously released Petitioner on his own recognizance on December 17, 2023 pursuant to INA § 236 (8 U.S.C. § 1226) (Exhibit C).

7. Petitioner retained counsel, filed his asylum application, was granted employment permission, and had submitted his written pleadings as directed by the Immigration Court (Exhibits G, D, and H)

8. On June 24, 2025 DHS detained Petitioner as he was driving to work based on "The President's declaration of a national emergency" (Exhibit B)

9. Petitioner did not violate the terms of his INA § 236 (8 U.S.C. § 1226) release on his own recognizance. (Exhibit B)

10. Immediate interim relief is necessary to prevent ongoing irreparable harm due to Petitioner's detention. Petitioner fears being moved out of the Western District of New York during these proceedings.

II. LEGAL STANDARD

11. A TRO is appropriate when the movant demonstrates:

   A. A likelihood of success on the merits;
   B. Irreparable harm absent relief;
   C. That the balance of hardships tips sharply in the movant's favor; and
   D. That the public interest favors relief.


III. ARGUMENT

A. *Petitioner Is Likely to Succeed on the Merits*

12. DHS is detaining Petitioner under the wrong statute. INA § 235 (8 U.S.C. § 1225) applies only to individuals seeking admission or placed in expedited removal. INA § 236 (8 U.S.C.

§ 1226) governs detention of individuals arrested inside the U.S. and placed in INA § 240 (8 U.S.C. § 1229a) proceedings.

13. Continued detention under INA § 235 (8 U.S.C. § 1225) is ultra vires, detention must match the statutory authority. Courts routinely hold that detention under the wrong statute is illegal and warrants immediate injunctive relief.

14. DHS now claims Petitioner is held under INA § 235 (8 U.S.C. § 1225) but they previously released Petitioner under INA § 236 (8 U.S.C. § 1226).

15. DHS has advised, during Petitioner's immigration bond hearing, that they have the authority to re-detain Petitioner pursuant to INA § 235 (8 U.S.C. § 1225) and that Immigration Judges have no authority over bond determinations under the BIA holdings in *Matter of Q. LI*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 217 (BIA 2025)

16. The decision to place an alien in expedited removal proceedings pursuant to INA § 235 (8 U.S.C. § 1225) or full removal proceedings pursuant to INA § 240 (8 U.S.C. § 1229a) is a discretionary decision, pursuant to agency precedent, despite the statutory use of the word "shall" in INA § 235 (8 U.S.C. § 1225). *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520 (BIA 2011)

17. Petitioner argues removal proceedings are civil in nature and DHS waived their statutory right to subject Petitioner to the mandatory detention and asylum screening of INA § 235 (8 U.S.C. § 1225) when they chose to skip that process and place Petitioner directly in INA § 240 (8 U.S.C. § 1229a) removal proceedings with service of the Notice to Appear on August 18, 2023 and release on his own recognizance under INA § 236 (8 U.S.C. § 1226).

18. Petitioner argues DHS is using immigration detention as a deterrent to future asylum seekers and as punishment for Petitioner's manner of entry despite INA § 208 (8 U.S.C. § 1158) that provides: "Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters), irrespective of such alien's status, may apply for asylum in accordance with this section or, where applicable, section 1225(b) of this title."

19. Petitioner relied upon INA §§ 208, 240, and 236 ( 8. U.S.C. §§ 1158, 1229a, and 1226). He lawfully sought asylum pursuant to INA § 208 (8 U.S.C. § 1158). He followed the rules of his release pursuant to INA § 236 (8 U.S.C. § 1226). He retained counsel, followed the Immigration Court's scheduling orders, filed his I-589 asylum and withholding application, and was waiting for his final trial date after submitting his written pleadings. Petitioner asserts he had vested statutory rights and the DHS action in re-detaining Petitioner unfairly impairs these statutory rights.

20. Respondents are applying a statute or policy retroactively to facts that pre-date *Matter of Q. LI*, 29 I&N Dec. 66 (BIA 2025) and *Matter of Yajure Hurtado*, 29 I&N Dec. 217 (BIA 2025). Retroactivity is not favored in the law. *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994); *INS v. St. Cyr*, 533 U.S. 289 (2001)

21. Congress has not changed the statute and the agency has not issued new regulations adopting the BIA decision in *Matter of Q. LI*, *supra* and *Matter of Yajure Hurtado*, *supra*.

22. The Government announced at his bond hearing that Petitioner is detained pursuant to INA § 235 (8 U.S.C. § 1225), despite previously choosing to categorize Petitioner's detention / release as governed by INA § 236 (8 U.S.C. § 1226). The respondents insist this change from decades of precedents and long standing interpretation is based on the new interpretation of the statute set out in *Matter of Q. LI*, *supra* and *Matter of Yajure Hurtado*, *supra*. Petitioner argues that this Court may reject the BIA's interpretation of statutory language as the Agency has "no special competence" in statutory interpretation and Federal Courts have an "obligation to independently interpret" statutes. *Loper Bright Enterprises v. Raimando*, 603 U.S. 369, 400 (2024)

23. At the point in time Respondents sought to re-detain Petitioner pursuant to INA § 235 (8 U.S.C. § 1225), he was not near the place he had crossed into the United States and crossing into the United States had occurred two years before his re-detention. Under the plain language of the statute, he fell under INA § 236 (8 U.S.C. § 1226), at the time of his detention in 2025.

24. Petitioner argues his detention is discretionary, not mandatory, and violates his right to due process of law. Petitioner argues he is entitled to due process whether his presence here is lawful, unlawful, temporary, or permanent. *Zadvydas v. Doris*, 533 U.S. 678, 693 (2001)

25. Petitioner argues he will be successful in establishing he has a liberty interest under the U.S. Constitution and protected by the Due Process Clause of the Fifth Amendment to the U.S. Constitution. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) Petitioner also believes he will be successful in establishing he was erroneously deprived of his liberty without due process of law as he was afforded no process when he was re-detained solely based on a presidential proclamation.

26. Petitioner argues that *DHS v. Thuraissigiam*, 591 U.S. 103 (2020) is inapplicable as Petitioner was not detained close to the border shortly after an unlawful entry. Petitioner is a person inside the United States entitled to due process at the time of his 2025 detention.

27. Petitioner argues DHS waived any argument that Petitioner should be treated as an individual who has not yet effected an entry and was recently detained near the border. Respondents facilitated Petitioner's entry by their initial determination to release Petitioner on his own recognizance pursuant to INA § 236 (8 U.S.C. § 1226), whereafter he took up

residence in New York State and has resided in New York State for over two years while he awaits his final hearing date.

28. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) is the case which sets out the three factor balancing test to determine whether a violation of procedural due process has occurred. The three part test as applied to the fact of this case:

   a. *Private interest*: Petitioner's right to be free from arbitrary civil detention not mandated by statute and to pursue his asylum claim on the Immigration Court's non-detained docket.

   b. *Risk of Erroneous Deprivation*: Petitioner was provided no process, nor notice about the cancellation of his release on his own recognizance prior to his re-detention by ICE. Petitioner was previously found not to pose a flight risk or danger to the community when DHS released him under INA § 236 (8 U.S.C. § 1226) in 2023. DHS has provided no evidence Petitioner violated his release conditions and in fact premises his detention solely on a presidential proclamation. When Petitioner sought a bond hearing under the statutory process, the Immigration Judge held he had no jurisdiction under *Matter of Yajure Hurtado*, 29 I&N Dec. 217 (BIA 2025). Petitioner still does not understand what he did wrong to result in his re-detention without notice or an opportunity to be heard.

   c. *Government's interest*: The government's interest, beyond satisfying the demands of the presidential proclamation, are unclear. The Petitioner, who is neither a flight risk nor a danger to the community is costing tax payers somewhere between $150 - $200 per day to cover the cost of detention. He is not a flight risk nor danger to the community according to DHS's own determination in 2023, which has proved to be true over the two years he was free of detention. Petitioner's case on the detained docket will take up government resources better used in expediting the cases of aliens who are a danger to the community or a flight risk. Petitioner's detention, without explanation of how he violated the conditions of his release, undermines all citizens belief that our immigration system is fair and that the federal government treats people fairly. Petitioner's detention undermines the public's belief that all persons in the United States are entitled to due process, particularly when they lose their liberty and are held in a criminal style facility for a violation of civil law. There is a public interest in the Government's observance of the U.S. Constitution and laws. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992)

29. Petitioner argues he is likely to prevail on the following merits of his claim:

   - That DHS is applying an incorrect statutory provision to deny him a meaningful bond hearing on the merits.

   - That DHS's action in applying the wrong statutory provision is ultra vires.

- That DHS waived their right to apply the INA § 235 (8 U.S.C. § 1225) process when they instead chose to use the INA § 240 (8 U.S.C. § 1229a) process in 2023.

- That DHS violated Petitioner's right to due process by the surprise re-detention without notice or an opportunity to be heard before being re-detained.

- That DHS violated Petitioner's right to due process by re-detaining him in 2025 after determining he was not a danger to the community nor a flight risk in 2023, without new facts that established he was a danger to the community or a flight risk.

- That DHS violated Petitioner's constitutional rights by retroactively applying a change in the law to justify his detention and strip the Immigration Court of review jurisdiction when he had a vested interest in his liberty and pursuing his asylum case from outside of jail-like detention.

B. *Petitioner Is Suffering Irreparable Harm*

30. Petitioner is being denied the statutory right to a meaningful bond hearing on the merits under INA § 236 (8 U.S.C. § 1226).

31. Petitioner's continued confinement under the wrong statute cannot be remedied with money damages.

32. Courts routinely recognize unlawful civil detention as irreparable harm.

33. Petitioner can no longer go to his counsel's office to review documents, discuss evidence, prepare with witnesses, or prepare for his trial.

34. Petitioner has retained an attorney and his new detention is an hour away from his counsel's office which substantially increases his legal fee expense despite the pro bono preparation of the Habeas Corpus petition and motion for a temporary restraining order.

35. Petitioner is nervous, confused and concerned that he will not be treated fairly in his asylum trial as his detention appears unlawful and without a rational reason since he did not violate the conditions of his release before he was re-detained.

36. Petitioner is held in a facility that by appearance and day to day living feels penalizing. The doors are metal and clang when opened and closed. Freedom of movement within the facility is restricted, as is time outdoors and food choices. Limited recreational or education options are available to inmates. Searches of person and property can not be refused. Visits with anyone other than counsel are no-contact and limited to one hour. There is very little privacy and constant noise.

C. *The Balance of Hardships Favors Petitioner*

37. Correcting DHS's classification imposes no burden on DHS.  The Court could order Petitioner's release on his own recognizance be reinstated, reducing the government's burden.  INA § 236 (8 U.S.C. § 1226) bond hearings are routine at Batavia and could be easily scheduled.  By contrast, Petitioner continues to suffer serious harm every day detention continues and he is deprived of his liberty.

D. *The Public Interest Supports Relief*

38. The government has no legitimate interest in detaining someone under the wrong statute.

39. The public interest always favors adherence to statutory limits, constitutional compliance, and preventing unlawful detention.

40. Petitioner already established he is neither a flight risk nor a danger to the community and his re-detention, when he was abiding by all the rules, undermines the public perception of U.S. Immigration Enforcement as fair and lawful. The public is being burdened by the cost of detention for an individual who is neither a flight risk nor a danger to the community and is being detained for a civil violation of law while his case is pending, not as a form of punishment.

IV. REQUESTED RELIEF

41. Petitioner respectfully asks the Court to issue a Temporary Restraining Order:

    a. Prohibiting Respondents from continuing to detain Petitioner under INA § 235 (8 U.S.C. § 1225);

    b. Declaring that Petitioner must be classified as detained under INA § 236 (8 U.S.C. § 1226) and directing DHS to restore Petitioner's release on his own recognizance that was unlawfully canceled; or in the alternative,

    c. Ordering Respondents to provide Petitioner with a bond hearing before an Immigration Judge within 7 days, at which:
       - The IJ must treat Petitioner as a § 236 detainee;
       - Petitioner is eligible for bond; and
       - DHS bears the burden of establishing changed circumstances and that Petitioner is a flight risk or a danger to the community.
       - The hearing complies with constitutional standards.

7

    d.   Ordering Respondents not to move Petitioner's detention location outside of the Western District of New York during the pendency of this matter;

    e.   Ordering Respondents to show cause why a preliminary injunction should not issue.

V. CONCLUSION

42. For the reasons stated above, this Court should grant the TRO and order Respondents to classify Petitioner under INA § 236 (8 U.S.C. § 1226) and restore his release on his own recognizance or in the alternative, provide a prompt bond hearing where the burden is on DHS to establish a change in circumstances such that Petitioner is now a flight risk or a danger to the community which would justify the DHS no bond determination, and direct that Petitioner's detention location not be changed while this matter is pending before this Court.

Respectfully submitted,

/S/ Anne E. Doebler
Anne E. Doebler
Anne E. Doebler, P.C.
14 Lafayette Square. Suite 1800
Buffalo, NY 14203
(716) 898-8568
annedoeblerpc@gmail.com